UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHIKEZIE OTTAH, | |
| Plaintiff, | |
| -v.- | |
| BRACEWELL LLP, | |
| Defendant. | |

21 Civ. 455 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Chikezie Ottah, proceeding *pro se*, brings this action against Defendant Bracewell LLP ("Bracewell"),[1] for direct and indirect infringement of his patent, United States Patent No. 7,152,840 (the "'840 Patent"). The '840 Patent contains a single claim for a removable "book holder," which claim Plaintiff asserts extends to a camera mounting system used by the New York Metropolitan Transit Authority (the "MTA"). Plaintiff seeks to hold Bracewell, an international law firm, liable for alleged violations of 35 U.S.C. § 271, on the theory that it either supplied the infringing camera mounting system to the MTA or induced its former client UTC Building & Industrial Systems ("UTC") to supply the infringing product. For these alleged violations, Plaintiff seeks $18 million in damages.

Bracewell has moved to dismiss the action pursuant to Federal Rule of Procedure 12(b)(6) for failure to state a claim. For the reasons outlined below,

---

[1]     Defendant has clarified that its name is properly "Bracewell LLP." (*See* Def. Br. 2 n.2). The Clerk of Court is directed to amend the caption of this case to conform with the caption of this Opinion.

the Court grants Defendant's motion and dismisses Plaintiff's Complaint with prejudice.

**BACKGROUND**[2]

## A.   Factual Background

### 1.   The '840 Patent

The '840 Patent, entitled "Book Holder," recites a "book holder removably attachable to a vehicle or structure such as a stroller, walker, wheelchair or car seat for mobile applications." (Goldman Decl., Ex. D (the "'840 Patent") at [54, 57]).[3] The patent specification, or the written description of the patent claim, delves into further detail, describing the book holder as "having an adjustable, releasable clipping means and a support arm configured for ... adjustment of the book supporting surface of the book holder to hold a book in a readable position in front of the user." (*Id.* at col. 1 ll. 9-13).

The '840 Patent contains a single claim, which reads in its entirety:

> 1. A book holder for removable attachment, the book holder comprising:
>
> a book support platform, the book support platform comprising a front surface, a rear surface and a

---

[2]   This Opinion draws its facts from the well-pleaded allegations of Plaintiff's Complaint (the "Complaint" or "Compl." (Dkt. #1)), which allegations the Court assumes to be true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The Court also considers the exhibits attached to the Declaration of Rachel B. Goldman in support of Defendant's motion to dismiss ("Goldman Decl., Ex. [ ]" (Dkt. #29)), which exhibits consist of documents that are either appended to the Complaint, appropriate subjects for judicial notice, or integral to the pleadings. *See Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss the Complaint as "Def. Br." (Dkt. #28); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #35); and Defendant's reply brief as "Def. Reply" (Dkt. #36).

[3]   The Court may consider the patent, as it is referenced by and relied upon in the Complaint. *See Broder* v. *Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).

> plurality of clamps, the front surface adapted for supporting a book, the plurality of clamps disposed on the front surface to engage and retain the book to the book support platform, the rear surface separated from the front surface;
>
> a clasp comprising a clip head, a clip body and a pair of resilient clip arms, the clip arms adjustably mounted on the clip head, the clip head attached to the clip body; and
>
> an arm comprising a first end and a second end and a telescoping arrangement, the clasp on the first end, the second end pivotally attached to the book support platform, the telescoping arrangement interconnecting the first end to[] the second end, the clasp spaced from the book support platform wherein the book holder is removably attached and adjusted to a reading position by the telescoping arrangement axially adjusting the spaced relation between the book support platform and the clasp and the pivotal connection on the book support platform pivotally adjusting the front surface with respect to the arm.

('840 Patent col. 6 ll. 14-38). In distinguishing the patented invention from previous iterations of book holders, the '840 Patent's specification explains that the "prior art does not accommodate easy and quick attaching the book support onto a structure for mobile use," thus giving rise to "a need for an improved Book Holder that is quickly and easily clipped to a mobile vehicle … for holding the book in a reading position in spaced relation to the clip." (*Id.* at col. 1 ll. 55-60).

The instant action is not the first time the scope of the '840 Patent has been presented to a federal court. Rather, this case is but the latest in a series of unsuccessful lawsuits brought by Plaintiff to expand the ambit of the '840 Patent. *See, e.g., Ottah* v. *Verizon Servs. Corp.,* No. 19 Civ. 8552 (LGS), 2020

WL 4016739, at *1 (S.D.N.Y. July 16, 2020) (granting summary judgment in favor of defendant), *appeal dismissed*, No. 2020-2198, 2020 WL 8615623 (Fed. Cir. Nov. 30, 2020); *Ottah* v. *Nat'l Grid*, No. 19 Civ. 8289 (PAE) (RWL), 2020 WL 2543105, at *1 (S.D.N.Y. Apr. 27, 2020), *report and recommendation adopted*, 2020 WL 2539075 (S.D.N.Y. May 19, 2020) (granting motion to dismiss); *Ottah* v. *BMW*, 230 F. Supp. 3d 192, 193 (S.D.N.Y. 2017) (granting motion to dismiss), *aff'd sub nom. Ottah* v. *Fiat Chrysler*, 884 F.3d 1135 (Fed. Cir. 2018); *Ottah* v. *VeriFone Sys., Inc.*, No. 11 Civ. 6187 (RMB), 2012 WL 4841755, at *1 (S.D.N.Y. Oct. 10, 2012) (granting summary judgment in favor of defendant), *aff'd*, 524 F. App'x 627 (Fed. Cir. 2013) (per curiam); *Ottah* v. *First Mobile Techs.*, No. 10 Civ. 7296 (CM), 2012 WL 527200, at *1 (S.D.N.Y. Feb. 17, 2012) (granting summary judgment in favor of defendant).[4]  The Court will discuss these cases, as relevant, below.

### 2.    The Alleged Infringement

At some point in the summer of 2014 and then again in March 2020, Plaintiff observed a camera mounting system on MTA buses and other vehicles that he believed to infringe the '840 patent.  (*See* Compl. 5; *see also* Pl. Opp. 16).[5]  Following his initial observation of the allegedly infringing camera

---

[4]    On this motion, the Court may take judicial notice of related lawsuits, judicial decisions, and litigation filings.  *See Gertskis* v. *U.S. E.E.O.C.*, No. 11 Civ. 5830 (JMF), 2013 WL 1148924, at *1 (S.D.N.Y. Mar. 20, 2013) ("A district court reviewing a motion to dismiss may also consider documents of which it may take judicial notice, including pleadings and prior decisions in related lawsuits."), *aff'd sub nom. Gertskis* v. *E.E.O.C.*, 594 F. App'x 719 (2d Cir. 2014) (summary order).

[5]    Because Plaintiff's filings are not consecutively paginated, all references to his submissions in this Opinion use the pagination generated by this Court's electronic case filing ("ECF") system.

mounts, Plaintiff sent a complaint letter to the MTA.  (Compl. 5).[6]  In response,

the MTA provided Plaintiff with Bracewell's information, to whom Plaintiff

began to direct his protestations regarding the alleged infringement of his

patent.  (*Id.*).[7]  Plaintiff also indicated his desire that Bracewell purchase a

license for his patent.  (*Id.*).

On August 13, 2014, Jonathan R. Spivey, a partner at Bracewell, wrote a

letter to Plaintiff on behalf of his client UTC, responding to Plaintiff's

accusation that "the mobile camera mounting systems mounted on MTA buses

---

[6]     In the Complaint, Plaintiff suggests that he first saw the allegedly infringing camera mount on July 1, 2014.  (*See* Compl. 5).  However, this timeline is contradicted by Plaintiff's opposition submission (*see* Pl. Opp. 16 (noting Plaintiff's observation in June 2014 of "a camera mount that belong[s] to me")) and by a letter from Bracewell to Plaintiff, dated August 13, 2014, which letter indicates that the MTA received undated correspondence from Plaintiff on June 9, 2014, regarding these same allegations of patent infringement.  (*See* Goldman Decl., Ex. A (the "Bracewell Letter") at 1).

Due to legibility issues with the copy of the Bracewell Letter attached to the Complaint (*see* Compl. 42, 44), the Court's citations to the Bracewell Letter refer to the version of same included in the Goldman Declaration.  *See, e.g., Kleinman* v. *Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013) (explaining that courts may "consider any written instrument attached to the complaint" on a motion to dismiss).

[7]     Plaintiff describes Bracewell inconsistently in the Complaint, referring to it as both "a law firm for UTC [and] MTA" (Compl. 5), and "a contractor [for the] MTA in New York City," hired to "mount camera [ ] equipment to MTA vehicle[s] and buses" (*id.* at 30). The Court derives clarity on this point from Bracewell's registered limited liability partnership registration, which explains that Bracewell is engaged in the "practice of law and everything necessary, advisable, proper or convenient for the accomplishment thereof." (Goldman Decl., Ex. B at ¶ 5; *see also id.* at Ex. C (screen capture of Bracewell's website describing Bracewell as "a leading law firm")).  *See also Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 607 F. Supp. 2d 500, 502 (S.D.N.Y. 2009) ("Where a conclusory allegation in the complaint conflicts with a statement made in a document attached to the complaint, the document controls and the allegation is not accepted as true.").

The Court may take judicial notice of Bracewell's application of a registered limited liability partnership, as it is a public record filed with a Secretary of State, as well as the "About" page of Bracewell's website.  *See, e.g., Holland* v. *JPMorgan Chase Bank, N.A.*, No. 19 Civ. 233 (PAE), 2019 WL 4054834, at *3 (S.D.N.Y. Aug. 28, 2019) ("Pursuant to [Federal Rule of Evidence] 201 [pertaining to judicial notice], courts have considered … documents filed with a Secretary of State, … and information publicly announced on certain non-governmental websites, such as a party's official website.").

(and supplied by UTC) infringe the Book Holder Patent[.]" (*See* Bracewell

Letter 1). In this letter, Bracewell explained its position that UTC and the MTA

did not believe that a license to use the Book Holder patent was needed, in

part, because at least two courts had already found that the '840 Patent did

not cover a "camera mounting system [that] is fixed in place and cannot be

removed without tools[.]" (*See id.* at 1-2).[8] The letter also detailed a second

deficiency in Plaintiff's infringement argument: that UTC's camera mounting

system "was created and used at least as early as 2002," or approximately two

years before the filing of the '840 Patent. (*Id.* at 2). The letter reasoned that "a

fundamental principle of patent law provides that an accused product cannot

infringe a patent if the product predates the patent." (*Id.*).

Nearly six years passed before Plaintiff sent a second complaint letter to

Bracewell on March 17, 2020, again raising the possibility of Bracewell

licensing his patent. (*See* Compl. 5). According to Plaintiff, Bracewell has not

responded to this second complaint letter. (*Id.*).

## B.    Procedural History

Plaintiff commenced this lawsuit with the filing of the Complaint on

January 15, 2021. (Dkt. #1). On February 2, 2021, the Court noticed an

---

[8]    Nowhere in the Complaint does Plaintiff challenge the representation in the Bracewell
Letter that the allegedly infringing mount is "fixed in place and cannot be removed
without tools." (Bracewell Letter at 2). Instead, Plaintiff focuses his infringement
arguments throughout the Complaint on other features of the allegedly infringing
mount, such as its adjustability, interconnected telescoping arrangement, and
compatibility with electronic devices. (*See* Compl. 21-26). As such, the Court accepts
as true the uncontroverted representation in the Bracewell Letter — which letter is
appended to the Complaint — that the allegedly infringing mount is not easily
removable without the use of tools.

initial pretrial conference, which conference was scheduled for April 27, 2021. (Dkt. #6). In advance of this conference, on April 21, 2021, Plaintiff submitted a status letter, wherein he reiterated his claim construction argument regarding the '840 Patent and informed the Court that Defendant had not cooperated in settlement discussions. (Dkt. #11).

The following day, on April 22, 2021, the Court adjourned the scheduled initial pretrial conference and issued an order to show cause directing Plaintiff to explain why this case should not be dismissed following Defendant's failure to appear in the case and Plaintiff's concomitant failure to prosecute this case. (Dkt. #10). Thereafter, on May 5, 2021, Plaintiff submitted two letters: the first explaining that Defendant had yet to acknowledge service of the Complaint and requesting the Court's entry of default (Dkt. #12); and the second detailing Plaintiff's efforts to contact this Court's Pro Se Litigation Unit in furtherance of this case (Dkt. #13). On May 10, 2021, the Court ordered Plaintiff to seek a certificate of default in accordance with the procedures outlined in the Court's Individual Rules of Practice in Civil Cases and to produce all communications between Plaintiff and any representative or agent of Defendant. (Dkt. #14). Plaintiff produced these materials on May 20, 2021. (Dkt. #17).

Defendant appeared in this case on May 26, 2021, and simultaneously asked for an extension of its time to answer the Complaint, claiming that it had not been properly served. (Dkt. #18-19). That same day, the Court granted Defendant's request for an extension of its time to answer and denied Plaintiff's request for a default judgment. (Dkt. #20).

On June 18, 2021, Defendant filed a pre-motion letter requesting a conference for its anticipated motion to dismiss the Complaint.  (Dkt. #21).  Plaintiff filed an opposition to this request on June 24, 2021.  (Dkt. #22).  By order dated June 25, 2021, the Court dispensed with a pre-motion conference and set a briefing schedule for Defendant's motion.  (Dkt. #23).  On July 2, 2021, Plaintiff filed an unauthorized sur-reply to Defendant's pre-motion letter (Dkt. #25), which the Court accepted on July 6, 2021 (Dkt. #26).

Defendant filed its motion to dismiss and supporting papers on July 23, 2021.  (Dkt. #27-32).  Plaintiff filed a memorandum of law and supplemental letter on September 13, 2021, and September 14, 2021, respectively.  (Dkt. #33-35).[9]  Defendant filed its reply brief on September 24, 2021.  (Dkt. #36-37).  Accordingly, the Court deems Defendant's motion to dismiss fully briefed and ripe for consideration.

## DISCUSSION

### A.    Applicable Law

#### 1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life*

---

[9]    Plaintiff's memorandum of law and supplemental letter are consolidated into a single filing at docket entry 35.  For ease of reference, all citations in this Opinion to Plaintiff's opposition are to this consolidated filing.

8

*Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  While the plausibility requirement "is not akin to a 'probability requirement' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Toward that end, a plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'" *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *see also Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam) ("[I]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." (citation omitted)).  "[H]owever inartfully pleaded, a *pro se* complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle her to relief." *Legeno* v. *Corcoran Grp.*, 308 F. App'x 495, 496 (2d

Cir. 2009) (summary order) (quoting *Posr* v. *Ct. Officer Shield No. 207*, 180 F.3d 409, 413-14 (2d Cir. 1999)).  "That said, the liberal pleading standard accorded to *pro se* litigants is not without limits, and all normal rules of pleading are not absolutely suspended." *Hill* v. *City of New York*, No. 13 Civ. 8901 (KPF), 2015 WL 246359, at *2 (S.D.N.Y. Jan. 20, 2015) (internal quotation marks and citation omitted).  To survive a Rule 12(b)(6) motion to dismiss, a *pro se* plaintiff's factual allegations still must at least "be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.  Even in the *pro se* context, a court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

A court adjudicating a motion to dismiss under Rule 12(b)(6) "may review only a narrow universe of materials." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  This narrow universe includes "facts stated on the face of the complaint, ... documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken," as well as documents that can properly be considered "integral" to the complaint.  *Id.* (internal citation omitted).  As specified above, the Court here considers the following additional materials on this motion: (i) the Bracewell Letter, which Plaintiff also included in his Complaint (Goldman Decl., Ex. A); (ii) Bracewell's application of a registered limited liability partnership filed with the Texas Secretary of State, which application is an appropriate subject for

judicial notice (*id.*, Ex. B); (iii) Bracewell's "About" page from its public-facing website, of which the Court may also take judicial notice (*id.*, Ex. C); (iv) the '840 Patent, which is referenced extensively in and is integral to the Complaint (*id.*, Ex. D); and (v) previous court decisions in cases brought by Plaintiff concerning the '840 Patent, a number of which are referenced in the Complaint (*see, e.g.*, Compl. 16, 23, 31).

### 2.    Patent Infringement

Analyzing a claim of patent infringement is a two-step process: "[t]he first step is determining the meaning and scope of the patent claims asserted to be infringed.  The second step is comparing the properly construed claims to the device accused of infringing." *Markman* v. *Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc) (internal citations omitted), *aff'd*, 517 U.S. 370 (1996); *accord Indivior Inc.* v. *Dr. Reddy's Labs.*, *S.A.*, 930 F.3d 1325, 1336 (Fed. Cir. 2019).  "To prove infringement, the patentee must show that the accused device meets each claim limitation [of the patent-in-suit], either literally or under the doctrine of equivalents." *Deering Precision Instruments, L.L.C.* v. *Vector Distribution Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003) (citation omitted).

Claim construction, the first step in the infringement analysis, is a matter of law.  *See Markman*, 52 F.3d at 979.  Courts determine the scope of a claim by applying well-known principles of claim construction and examining three relevant sources: the language of the claim, the specification, and the prosecution history.  *See Vitronics Corp.* v. *Conceptronic, Inc.*, 90 F.3d 1576,

1582-83 (Fed. Cir. 1996).  Patent claims "are generally given their ordinary and customary meaning." *Phillips* v. *AWH Corp.* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citation omitted).  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (citation omitted).

The second step of the infringement analysis is comparing the properly construed claims to the allegedly infringing device.  Infringement may be committed either directly, by "mak[ing], us[ing], offer[ing] to sell, or sell[ing]" a patented invention; or indirectly, by "actively induc[ing] infringement of a patent." *See* 35 U.S.C. § 271(a)-(b).  Here, the Court construes the Complaint to allege both theories of infringement.  To establish direct patent infringement, "every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent." *Becton Dickinson & Co.* v. *C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990) (citation omitted).  To state a claim for indirect infringement, commonly referred to as "induced infringement," a plaintiff must demonstrate that the defendant: (i) had knowledge of the patent-in-suit; (ii) knew the induced acts were infringing; and (iii) specifically intended to encourage another's infringement.  *See Commil USA, LLC* v. *Cisco Sys., Inc.*, 575 U.S. 632, 639-42 (2015).  Inducement liability arises only if there is direct infringement by another party.  *See Limelight Networks, Inc.* v. *Akamai Techs., Inc.*, 572 U.S. 915, 920-21 (2014).

12

**B.     Analysis**

Although Plaintiff is not entirely consistent in describing how Defendant
allegedly violated his rights under the '840 Patent, the Court construes the
Complaint to be asserting claims of both direct and indirect infringement.  For
instance, Plaintiff characterizes Bracewell as both "a contractor [for the] MTA in
New York City" that "mount[s] camera [ ] equipment to MTA vehicle[s] and
buses" (Compl. 30), and as "a law firm for UTC [and the] MTA" (*id.* at 5).
Plaintiff presents similarly discrepant accusations of Defendant's role in the
alleged infringement, asserting both that Bracewell directly infringed on
Plaintiff's rights under the '840 Patent through "continuous illegal
manufacturing, or making and selling the product/camera without licenses"
(*id.* at 5); and that Bracewell, as a "litigation expert on patent infringement,"
indirectly infringed on Plaintiff's patent rights by advising UTC not to enter into
a licensing agreement with Plaintiff (*see* Pl. Opp. 20-22).  Defendant counters
that (i) Plaintiff has sued the wrong entity for direct patent infringement;
(ii) many of Plaintiff's arguments have been raised and rejected in prior
litigation over this same patent; and (iii) a law firm may not be held liable to
third parties for legal advice rendered to a client, absent allegations of
misconduct.  (Def. Br. 1-2, 8-10).[10]  As discussed below, Plaintiff has not
plausibly stated a claim for either direct or indirect infringement.

---

[10]     The Court notes the approximately six-and-a-half-year delay between Plaintiff's initial
charges of patent infringement voiced in the summer of 2014, and the initiation of this
action on January 15, 2021.  Pursuant to 35 U.S.C. § 286, "no recovery shall be had for
any infringement committed more than six years prior to the filing of the complaint or
counterclaim for infringement in the action."  Thus, even if Plaintiff had stated a

### 1.   Plaintiff Has Not Stated a Claim for Direct Patent Infringement

The bulk of the Complaint outlines Plaintiff's view that the '840 Patent covers an adjustable "connector or interconnectors in camera and or camera devices," including the MTA's camera mounting system at issue here.  (*See, e.g.*, Compl. 15).  The Court understands Plaintiff to be asserting that the challenged camera mounting system possesses every claim limitation in the '840 Patent (*i.e.*, literally infringes Plaintiff's patent), or that it contains elements identical or equivalent to each claimed element in the patented invention (*i.e.*, is equivalent to Plaintiff's patent under the doctrine of equivalents).

Defendant argues that the single claim in the '840 Patent is clearly limited in scope to a book holder that is easily removable without the use of tools and thus does not extend to the at-issue camera mounting device.  (Def. Br. 1).  In further support of its position, Defendant points to several decisions from other lawsuits brought by Plaintiff concerning the '840 Patent to argue

---

plausible claim for patent infringement, he would be unable to recover monetary damages for any infringing conduct prior to January 15, 2015.

The Court further notes that the doctrine of laches is a cognizable defense to patent infringement that may bar an infringement action where: (i) the "patentee unreasonably and inexcusably delayed filing suit"; and (ii) the delay "resulted in material prejudice to the defendant."  *See Ecolab, Inc.* v. *Envirochem, Inc.*, 264 F.3d 1358, 1371 (Fed. Cir. 2001) (citation omitted).  When a plaintiff delays filing suit for more than six years, a rebuttable presumption of laches arises.  *Pei-Herng Hor* v. *Ching-Wu Chu*, 699 F.3d 1331, 1334 (Fed. Cir. 2012).  In its motion, however, Defendant does not assert a laches defense.  *Cf. Masterson* v. *NY Fusion Merch., LLC*, 300 F.R.D. 201, 206 (S.D.N.Y. 2014) ("[The] defenses of laches and equitable estoppel frequently require consideration of facts outside the complaint.  In general, when a defense requires consideration of facts outside of the complaint, it is inappropriate to consider it on a motion to dismiss, unless the facts necessary to establish the defense are evident on the face of the complaint." (internal quotation marks and citations omitted)).

that Plaintiff "is estopped from raising arguments challenging the scope of the '840 Patent as finally decided by courts in this district and the Federal Circuit." (Def. Reply 4-5).

Defendant has the better of the argument, because (i) the plain terms of the '840 Patent belie Plaintiff's proffered construction of its singular claim, and (ii) Plaintiff's arguments have been unequivocally rejected by multiple courts adjudicating the scope of the '840 Patent in analogous circumstances. Thus, as a matter of law, Plaintiff's allegations cannot support a finding of direct patent infringement.

### a.    Literal Infringement

"Literal infringement requires that each and every limitation set forth in a claim appear in an accused product." *V-Formation, Inc.* v. *Benetton Grp. SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005). "We begin a claim construction analysis by considering the language of the claims themselves." *Trs. of Columbia Univ. in N.Y.* v. *Symantec Corp.*, 811 F.3d 1359, 1362 (Fed. Cir. 2016) (citation omitted). "[C]laims must be read in view of the specification, of which they are a part." *Id.* (citation omitted). Courts adjudicating the '840 Patent have uniformly found its single claim to be construable based on the commonly understood words contained therein. *See, e.g.*, *Verizon Servs. Corp.*, 2020 WL 4016739, at *3 ("Plaintiff's claim [in the '840 Patent] is construable based on commonly understood words."); *First Mobile Techs.*, 2012 WL 527200, at *3 ("The claim limitations [are] readily understandable[.]"). The Court agrees that

the scope of the '840 Patent may be elucidated using the plain terms of its single claim.

Here, Plaintiff argues that the '840 Patent covers nonremovable, adjustable telescopic arrangements that can support and connect to electronic devices, such as laptops and cameras.  (*See, e.g.,* Compl. 13-16, 23-24; Pl. Opp. 17-18).  In Plaintiff's estimation, the MTA's camera mounting system violates the '840 Patent because, while not removable itself, it uses a resilient clip that can attach a camera to a platform and is telescopically and axially adjustable.  (*See* Compl. 21-22).  However, the language of the '840 Patent "is clear and plainly does not include a bolted-on, in-vehicle technology holder," such as the device being challenged here.  *Nat'l Grid*, 2020 WL 2543105, at *11; *see also Verizon Servs. Corp.*, 2020 WL 4016739, at *3 ("[T]he plain terms of the '840 Patent claim define an invention with a significant limitation — that a clasp is used for removable attachment — and Plaintiff's argument would effectively delete this limitation."); *First Mobile Techs.*, 2012 WL 527200, at *8 ("[O]nly a product which can be attached quickly, removably, and without tools, in a manner akin to that of the '840 Patent, can infringe that patent.  As a matter of law, any product lacking this feature cannot infringe the '840 Patent, even if Ottah's product can be configured in other ways.").  As a sister court in this District previously explained in construing the relevant claim language:

> [t]he '840 [P]atent's claim describes a detachable, adjustable and pivoting mechanism used to hold items, namely books, in place for reading.  The claim states

16

that "the book holder is removably attached and
adjusted to a reading position by the telescoping
arrangement axially adjusting the spaced relation
between the book support platform and the clasp and
the pivotal connection on the book support platform
pivotally adjusting the front surface with respect to the
arm." *The '840 patent contains no claim that can be
plausibly construed to cover a mobile camera device, a
mounted camera, or any kind of camera.*

*BMW*, 230 F. Supp. 3d at 196-97 (emphasis added) (internal citation omitted).

Moreover, courts in this District and the Federal Circuit have rejected
Plaintiff's claims of infringement of the '840 Patent in circumstances
comparable to the case at bar.  The first such case was *Ottah* v. *First Mobile
Technologies*, wherein Judge McMahon granted summary judgment to the
defendant on Plaintiff's claim that the '840 Patent extended to a laptop docking
station designed to be drilled into the floorboard of a car.  *See* 2012 WL
527200, at *1, 7.  Next, in *Ottah* v. *VeriFone Systems, Inc.*, Judge Berman
granted summary judgment to the defendant on Plaintiff's claim that the '840
Patent covered fixed mounts for electronic displays in New York City taxicabs,
*see* 2012 WL 4841755, at *1-3, which decision was later affirmed by the
Federal Circuit, *see generally* 524 F. App'x 627.  In *Ottah* v. *BMW*, Chief Judge
Swain dismissed Plaintiff's claims that the '840 Patent encompassed vehicle-
mounted cameras.  *See* 230 F. Supp. 3d at 196-97.  The Federal Circuit also
affirmed that decision.  *See Fiat Chrysler*, 884 F.3d at 1141-42.  In *Ottah* v.
*National Grid*, Judge Engelmayer adopted the report and recommendation of
Magistrate Judge Lehrburger, who recommended dismissal of Plaintiff's patent
infringement claims brought against a company for use of a laptop holder

17

affixed to its vehicles.  *See* 2020 WL 2543105, at *11-14, *report and recommendation adopted*, 2020 WL 2539075.  And most recently, Judge Schofield, in *Ottah* v. *Verizon Services Corp.*, granted summary judgment to the defendant where Plaintiff asserted that the '840 Patent covered a computer laptop mount that was affixed to a vehicle's floor.  *See* 2020 WL 4016739, at *3-4.

Plaintiff repeatedly asserts that these courts have been misled in construing the '840 Patent.  (*See, e.g.*, Compl. 13, 16-17; Pl. Opp. 17, 22).  But the Court does not consider Plaintiff's conclusory assertions as reason to depart from the myriad court decisions reviewing and interpreting the claim limitations in the '840 Patent to "require that the book holder have a *removable mounting*."  *VeriFone Sys.*, 524 F. App'x at 629 (emphasis added).  To the contrary, the Court agrees with the Federal Circuit that "[n]o error has been shown in this claim construction" and thus sees "no reason for departing from the rules of collateral estoppel or *stare decisis* as to this claim term."  *Fiat Chrysler*, 884 F.3d at 1139 (citations omitted).

In opposition, Plaintiff appears to suggest that more recent court decisions have started "moving in [a] different direction" in interpreting the '840 Patent.  (Pl. Opp. 22).  Plaintiff specifically cites *Ottah* v. *National Grid* as an example of a case that he believes endorses his view that the '840 Patent covers interconnectors with a platform that can be modified to fit certain technology. (*See id.*).  To the contrary, this case — as well as every other case discussing the scope of the '840 Patent — cuts decidedly against Plaintiff's argument.  *See,*

*e.g.*, *Nat'l Grid*, 2020 WL 2543105, at *12 ("Contrary to Ottah's assertions in the Complaint, the claim does not reference being a 'technology holder' or a 'technology or book holder in a mobile vehicle environments [*sic*].' Neither does the claim's language mention laptop computers or technology, nor does it reference any sort of bolting, mounting, or screwing of the device into mobile vehicles." (alterations in original) (internal citations omitted)). Just as in *National Grid*, and the related cases that preceded it, here too the Court finds that Plaintiff's claim of literal patent infringement regarding a mounted technology holder fails as a matter of law.

### b.    Doctrine of Equivalents

Although Plaintiff does not clearly invoke the doctrine of equivalents, the Court liberally construes Plaintiff's comparison of the MTA's camera mounting system to the patented book holder as asserting such an argument. (*See, e.g.,* Compl. 30-32; *see also* Pl. Opp. 16). On this point, Defendant contends that Plaintiff's argument based on the doctrine of equivalents "has been explicitly rejected by courts of this District and the Federal Circuit." (Def. Br. 9 (quoting *Nat'l Grid*, 2020 WL 2543105, at *12)). The Court agrees.

The doctrine of equivalents enables a patent owner to prove infringement, despite a lack of literal infringement, if the differences between the claimed product and the product accused of infringement are insubstantial. *See Aquatex Indus., Inc.* v. *Techniche Sols.*, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (explaining that the doctrine of equivalents "allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent

claim but which could be created through trivial changes").  The test for the doctrine of equivalents asks, "whether the accused device performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation."  *Olaf Soot Design, LLC* v. *Daktronics, Inc.*, 220 F. Supp. 3d 458, 468 (S.D.N.Y. 2016) (quoting *VirnetX, Inc.* v. *Cisco Sys., Inc.*, 767 F.3d 1308, 1322 (Fed. Cir. 2014)).  The doctrine of equivalents, however, is limited by the doctrine of prosecution history estoppel, "[w]here the original [patent] application once embraced the purported equivalent but the patentee narrowed his claims to obtain the patent or to protect its validity, the patentee cannot assert that he lacked the words to describe the subject matter in question."  *Festo Corp.* v. *Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 734 (2002); *accord EMD Millipore Corp.* v. *AllPure Techs., Inc.*, 768 F.3d 1196, 1203 (Fed. Cir. 2014).  "The touchstone of prosecution history estoppel is that a patentee is unable to reclaim through the doctrine of equivalents what was surrendered or disclaimed in order to obtain the patent."  *Loral Fairchild Corp.* v. *Sony Corp.*, 181 F.3d 1313, 1322 (Fed. Cir. 1999) (citation omitted)).

Courts considering similar equivalency arguments asserted by Plaintiff have rejected them as legally implausible and barred by the doctrine of patent prosecution history.  *See, e.g.*, *Nat'l Grid*, 2020 WL 2543105, at *12, 14 (rejecting Plaintiff's argument that a laptop holder is equivalent to his book holder because "the protection conferred by the ['840] Patent is limited in scope to the language of its claim, and Ottah is precluded from asserting

infringement by the doctrine of equivalents"); *see also Fiat Chrysler*, 884 F.3d at 1140 ("[P]rosecution history estoppel prevents [the '840 Patent] from encompassing, under the doctrine of equivalents, 'fixed mounts' that require tools for removal." (quoting *VeriFone*, 524 F. App'x at 630)).  Notably, every court to consider Plaintiff's rights under the '840 Patent has found his infringement claim under the doctrine of equivalents to be estopped by his prosecution history.  *See, e.g., Nat'l Grid*, 2020 WL 2543105, at *13-14 (citing with approval *VeriFone Sys., Inc.*, 2012 WL 4841755, at *3-4; *First Mobile Techs.*, 2012 WL 527200, at *5-6; and *BMW*, 230 F. Supp. 3d at 196-97, as courts that have previously held that "Ottah was precluded from asserting the doctrine of equivalents based on prosecution history estoppel").[11]  Judge McMahon's summary of this history in *Ottah* v. *First Mobile Technologies* is illustrative:

> In response to comments from the [United States Patent and Trademark Office ("USPTO")], Ottah amended the original incarnation of the '840 Patent to avoid the ambit of certain earlier patents.  In so doing, he explicitly narrowed its scope, particularly as regards its attachment.  Specifically, he argued to the USPTO that, among other things, "the use of adjustable, resilient clip arms on the clasp for clasping the book holder to the movable vehicle providing quick removal and attachment without tools ... is not obvious in light of the prior art."

---

[11]     *See also Ottah* v. *Fiat Chrysler*, 884 F.3d 1135, 1140 (Fed. Cir. 2018) (discussing how Plaintiff's decision to emphasize the removability of his invention while prosecuting his patent prevents him from later seeking to expand the scope of the '840 Patent to encompass, under the doctrine of equivalents, fixed mounts that require tools for removal); *Ottah* v. *VeriFone Sys., Inc.*, 524 F. App'x 627, 629-30 (Fed. Cir. 2013) (same); *Ottah* v. *Verizon Servs. Corp.*, No. 19 Civ. 8552 (LGS), 2020 WL 4016739, at *4 (S.D.N.Y. July 16, 2020) (same).

2012 WL 527200, at *8 (citation omitted).  In other words, because Plaintiff

"emphasized that the patentability of the '840 [P]atent's claim was based on the

removable nature of the mount … [h]e cannot now, under the doctrine of

equivalents, seek to broaden the scope of his claim to include mounts that are

fixed as well as those that are removable."  *VeriFone Sys., Inc.*, 524 F. App'x at

629-30.

Plaintiff presents no argument that refutes this consistent line of

precedent on his equivalency issue.  This Court accordingly joins the chorus of

others that have decided that the '840 Patent's singular claim covers an easily

removable book holder, not a fixed mounting system for technology.  Because

the '840 Patent does not cover the device Plaintiff is challenging in this case,

Plaintiff has failed to state a plausible claim for patent infringement.

## 2. Plaintiff Has Not Stated a Claim for Inducement of Infringement

Separately, Plaintiff seeks to hold Bracewell liable for inducement of

patent infringement based on the legal advice it rendered to its then-client

UTC.  (*See* Pl. Opp. 22 (arguing that Bracewell's "fail[ure] to recommend

licensing" of the '840 Patent "resulted in an infringement of 35 U.S.C. 271(b)")).

Defendant argues that this claim fails because: (i) Plaintiff has failed to state a

claim for direct infringement, which necessarily forecloses an inducement

claim; and (ii) Bracewell cannot be held liable for the legal advice it rendered to

UTC, absent allegations of misconduct not found in the Complaint.  (Def.

Reply 3).  Defendant is correct on both points.

The Court need not dwell on the first point.  Section 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  "[D]irect infringement is a necessary predicate for a finding of induced infringement in the usual patent infringement case."  *Vanda Pharms. Inc.* v. *W.-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018) (citing *Limelight Networks, Inc.*, 572 U.S. at 921-22).  Because the Court has already determined that Plaintiff fails to state a claim for direct patent infringement, his inducement claim necessarily fails.

In addition, Plaintiff seeks to hold Bracewell liable for legal advice rendered to one of its clients.  Generally speaking, "under New York Law an attorney cannot be held liable to third parties for injuries caused by services performed on behalf of a client or advice offered to that client, absent a showing of fraud, collusion, or a malicious or tortious act."  *Farrell* v. *Hellen*, No. 03 Civ. 4083 (JCF), 2004 WL 433802, at *5 (S.D.N.Y. Mar. 10, 2004) (alteration and citations omitted); *see also Newburger, Loeb & Co.* v. *Gross*, 563 F.2d 1057, 1080 (2d Cir. 1977) ("Under New York law an attorney generally cannot be held liable to third parties for actions taken in furtherance of his role as counsel unless it is shown that he did something either tortious in character or beyond the scope of his honorable employment." (internal quotation marks and citation omitted)).  Even on the most generous reading possible, Plaintiff has alleged mere disagreement with the legal advice Defendant rendered to its then-client UTC regarding the scope of the '840 Patent.  Beyond this disagreement, the Complaint does not plausibly allege any wrongful conduct or action by

23

Defendant outside the scope of its representation.  Plaintiff's failure to set forth any facts that could plausibly give rise to a law firm's liability stands as an independent basis for denying his theory of inducement of patent infringement.

## C.   The Court Denies Plaintiff Leave to Amend

"Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court 'should freely give leave [to amend] when justice so requires.'"  *Gorman* v. *Covidien Sales, LLC*, No. 13 Civ. 6486 (KPF), 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014) (quoting Fed. R. Civ. P. 15(a)(2)).  Consistent with this liberal amendment policy, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."  *Id.* (quoting *Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  The Second Circuit has explained that, "[a] *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Grullon* v. *City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks and alterations omitted) (quoting *Chavis* v. *Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).  That being said, "it remains 'proper to deny leave to replead where ... amendment would be futile.'"  *Gorman*, 2014 WL 7404071, at *2 (quoting *Hunt* v. *All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998)).

Plaintiff has not sought leave to amend the Complaint, and even if he had, the Court concludes that any amendment would be futile.  Given Plaintiff's extensive history of filing unsuccessful lawsuits relating to the same

patent and involving the same or closely analogous issues to those implicated by this action, the Court does not believe that Plaintiff's pleading deficiencies are remediable by amendment.  Therefore, the Court finds that amendment would be futile, and declines to grant Plaintiff leave to amend, his *pro se* status notwithstanding.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and Plaintiff's claims are dismissed with prejudice.

The Clerk of Court is ordered to terminate all pending motions, adjourn all remaining dates, and close this case.  The Clerk of Court is further directed to mail a copy of this Opinion to Plaintiff at his address of record.

SO ORDERED.

Dated:      December 10, 2021
            New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge